Bouldin, J.,
delivered the opinion of the court.
This is a writ of error to a judgment of the Circuit court of the city of Lynchburg, awarding, at the instance of the defendant in error, a peremptory writ of mandamus to the sergeant of said city, requiring him to sell, for cash, certain personal property of the plaintiff in error, which had been seized by the sergeant under a writ of fieri facias issued from said court. The debt had been contracted prior to the 10th of April 1865, and the plaintiff' in error had required the sergeant to sell the property seized, on a credit of twelve months, in pursuance of the act of Assembly, approved March 28th 1870, entitled “an act to prevent the sacrifice of personal property at forced sales.”
In accordance with the requisition thus made, the sergeant advertised that he would, in pursuance of the act aforesaid, proceed to sell the property on the credit named; and Brown’s administrator applied to the Circuit court for a writ of mandamus, to compel the ser *175 geant to disregard the act aforesaid, and to sell the property for cast. The case was regularly matured for hearing; and the Circuit court being of opinion that the act of May 28th, 1870, was in violation of both State and Federal constitutions, and therefore void, awarded a peremptory writ of mandamus, as prayed for.
To this judgment of the Circuit court, Garland obtained a writ of error from a judge of this court; and the case comes before us upon the following assignment of errors:
1. That the writ of mandamus was not the proper remedy—the defendant in error having other plain and adequate legal remedies.
2. That the act aforesaid of March 28th, 1870, is a valid act, contravening neither the State nor the Federal constitution; and that the court erred in holding otherwise.
We shall consider only the last assignment of error.
Is the act aforesaid of March 28th, 1870, unconstitutional and void?
It is insisted by the defendant in error that it is.
First: Because it impairs the obligation of contracts.
Secondly: Because it is in effect a stay law—the passage of which is forbidden by the 4th section of the 11th article of the State constitution.
We will enquire, in the first place, whether the act in question impairs the obligation of contracts.
That provision of the Federal constitution which forbids the States to pass any law impairing the obligation of contracts, we deem wise, salutary and conservative. “ Bills of attainder, ex post facto laws, and laws impairing the obligations of contracts,” (said Mr. Madison, in the 44th number of The Federalist,) “ are contrary to the first principles of the social compact, and to every principle of sound legislation;” and, he goes on to say, *176 “ very properly, therefore, have the convention added this constitutional bulwark in favor of personal security and private rights.” Events then recent strongly-suggested the propriety of erecting this bulwark. This restriction upon the legislative power of the States, said Ch. Justice Marshall, Fletcher v. Peck, 6 Cranch’s R., 87, 137-8, had its origin in a determination on the part of the people of the United States to shield themselves and their property from “ the violent acts which grow out of the feelings of the moment,” * * * “ from the effects of those sudden and strong passions to which men are exposed.” And the same learned and upright judge, in Sturgis v. Crowninshield, 4 Wheat. R. 122, 205, tells us, that the mind of the convention was directed to the subject by “a general dissatisfaction with that lax system of legislation which followed the war of' the revolution;” not the least prominent feature of which, we will add, was a tendency to relieve debtors by varying the legal effect of their contracts. To meet these evils, “ the convention apjiears to have established a great principle, that contracts shall be inviolable. The constitution, therefore, declares that no State4shall pass ‘ any law impairing the obligation of contracts.’ ” And so important did the several States regard this barrier against loose and unsound' legislation—against “ the effects of those sudden and strong passions to -which men are exposed,” especially in democratic governments, that many of them, not content with the shield of the Federal constitution, have severally adopted the same restriction as part of their State constitutions; thus giving to it an additional sanction. ,'The tendency of the State Legislatures, in times of trouble and pecuniary pressure, to fall into the lax and unsound system of legislation which gave rise to the restriction under consideration, must have been manifest to every intelligent and observing *177 mind, and clearly proves its wisdom; and this court will he prepared, hereafter as heretofore, to give it, in all proper cases, a fair and fearless application, without regard to the passions and prejudices of the times. "We do not think, however, that the case before us is such a case; because, in our opinion, the act of March 28th, 1870, which merely prescribes the terms on which property seized on execution in certain cases, may be sold, relates purely to the remedy—to the process of the court—and does not affect the obligation of the contract, or alter its terms in the least particular.
It is not our purpose to enter upon the discussion of the question so often considered, as to what constitutes the obligation of a contract, or to what extent the remedy may be varied or modified without impairing the obligation. The distinction between the obligation and the remedy has been long and well established; but it must be conceded that the line is somewhat shadowy. Any discussion of the general question, however, would be wholly out of place here, after the recent able and exhaustive opinions of Judge Christian, in the Homestead cases, and of Judge Rives, in Taylor v. Stearns, 18th Gratt. 244; in which cases all the authorities are reviewed. We will say, however, that in all the cases, the distinction between the obligation of the contract, and the remedy to enforce it, is clearly recognized. Whilst the former cannot be impaired by legislation, the latter, as a general rule, is always subject to modification or amendment, at the will of the Legislature ; even though such change may, to a certain extent, incidentally affect the interest of the parties to the cont ract.
Such modifications of the remedy have always been made at discretion by the legislative power, and have been held by the courts not to impair the right. It was, *178 as we have seen, a wholesome restriction on the legislative power of the States, to prevent them from letting any parties lose from their contracts; whether such parties be States, corporations, or individuals. But it would have been a most unfortunate restriction, to forbid them to alter or amend remedies by suit, or to mould and to modify judicial process. Such a restriction would be a complete bar to ail progress and improvement; would require all succeeding Legislatures to be utterly blind to the times and circumstances in and under which they may be called to act; that when sales of property are to be made under the mandate of the law, such sales are not to be regulated, as to terms, by an enlightened legislative discretion; but that one unchangeable iron rule must be applied, at all times and under all circumstances, without regard to the financial state of the country, the pecuniary condition of the people, or the interest of either creditor or debtor. Such a restriction on the legislative power would at all times be peculiarly unfortunate and unjust; but especially so in times like the present. But, happily alike for creditor and debtor, it has not been imposed. If the creditor be not deprived of his right to obtain a judgment against his debtor, or of the execution of that judgment, the mere form and mode of executing it has ever been varied at the will of the Legislature. The various forms of execution existing at the date of the contract, do not enter into and form a part of its obligation. Anyone, or all of them, may be modified or amended, or may be abolished altogether, and others substituted, having in view, in good faith, the enforcement of the judgment.
In Sturges v. Crowninshield, 4 Wheat. R., 122, the body of a debtor had been taken in execution under a writ of capias ad satisfaciendum, and by virtue of a State insolvent law he was released from custody, and the debt, de *179 dared to be discharged. So much of the State insolvent law as declared the debt to be discharged, was adjudged to be unconstitutional and void, as impairing the tion of the contract; but the release of the debtor’s body from execution was held lawful—that particular form of execution, although existing at the date of the contract, forming no part of its obligation. Ch. Justice Marshall said — p. 200: “ Confinement of the debtor may be a punishment for not performing his contract, or may be allowed as a means of inducing him to perform it; but the State may refuse to inflict this punishment, or may withhold this means, and leave the contract in full force. Imprisonment is no part of the contract; and simply to release the prisoner, does not imjiair the obligation.” And with the same reason we may say here, that a sale of the debtor’s property for cash, under a writ of fieri facias, is no part of the contract, any more than the imprisonment of his body was, under a writ of capias ad satisfaciendum, when allowed by law; and merely to require, under circumstances of strong necessity, that the officer of the law shall sell the debtor’s property, (all that he has, if necessary,) on a reasonable credit, and not for cash, does not impair the obligation of the contract. On the contrary, the obligation of the contract remains intact; and the object and effect of the law is to enforce it, in a mode beneficial alike to creditor and debtor as a class. It only requires that to be done by the law officer which every prudent man in the State would do, were he to sell his own property at such a period.
But it is argued that the obligation of the contract is impaired by the statute, because the debtor is thereby released from all liability to his creditor, and the judgment against him discharged by the payment to the creditor of bonds instead of money. If that were so, and the payment were forced on him against his will, *180 there would be much force iu the objection; but it is founded on a misapprehension of the terms and effect of the law. The bonds taken by the sheriff under the act, are in all respects like forthcoming bonds in their effect, They constitute only a temporary and quasi satisfaction fh® judgment. They are not required to be endorsed as credits on the execution, unless the creditor shall himself elect to receive them; in which event he endorses the credit himself; and if the judgment be thereby discharged, it is by his own voluntary act, of which he cannot complain. Unless he shall think proper to do this, he holds his original judgment undischarged, with cumulative security of the bonds taken by the law officer, supported by the guaranty of that officer and his sureties that the obligors to the bonds were solvent at their date—that they were good for the debt. Should these bonds not be paid at maturity, execution will be awarded as in the case of a forthcoming bond; and the amount collected will be a credit to the original judgment. Should there be a deficiency, the judgment will only be discharged pro tanto.
It will thus be seen, we think, that the interest of the creditor is sedulously and effectually guarded by the law. And we think, furthermore, that however defective the statute may be in its details, it is in principle eminently just and salutary; and at the time it was enacted, was imperatively demanded by the state of the country and the impoverished condition of the people.
It is unquestionably true, that the interest of the creditor is, to some extent, affected by every change of the remedy for the recovery of his debt; but such effect has never been regarded a's impairing the obligation of the contract, in the sense of the constitution.
The writ of capias ad respondendum, with the privilege on the part of the creditor by endorsement thereon, of requiring bail, was, until within a comparatively recent *181 period, the original process in all suits in this State on notes and bonds, and was a very efficient means of compelling a dishonest debtor (if able) to pay his debt. He was required thereby to give bail or to go to jail, unless he preferred to pay the debt or to confess judgment. This process was abolished by law, and a simple summons substituted, affecting sometimes very seriously the interest of the creditor; but no one has contended that the act was unconstitutional, because no one supposed that the form of original process entered into or was part of the contract of the parties.
Again: The writ of capias ad faciendum, by which the body of the debtor was, after judgment, taken in execution, was not only a most efficient mode, but at times was the only mode of making the debt. This, too. which was part of our own law until a recent date, has been abolished in Virginia, as in other States; and none have been heard to question the validity of the act; because none supposed that any particular form and character of execution constituted a part of the contract of the parties. Yet the interest of the creditor is often gravely affected by the absence of such a remedy.
The period of limitation existing at the date of the contract may be materially diminished by legislation; and by means thereof, through ignorance of the change or inadvertence, the creditor may lose his debt. Yet such laws have been invariably held to relate only to the remedy, and not to impair the obligation of the contract. And so with respect to registration laws. By a failure to observe them, titles to property which, in the absence of such laws would be unassailable, may be wholly divested. All such laws necessarily affect more or less the interest of parties; “but the changes in these laws are not regarded as necessarily affecting the obligation of contracts. Whatever belongs merely to the remedy, may *182 be altered at the will of tbe State; provided the alteration does not impair tbe obligation of tbe contract. And it does not impair it, provided it leaves to tbe party a substantial remedy, according to the course of justice as it existed at the time tbe contract was made.” Cooly on Constitutional Limitations, p. 285, and cases cited.
The course of justice, at the time the contract in this case was executed, allowed the creditor to proceed to judgment against his debtor, and in divers modes to subject the property of the latter to the payment of the debt. The rights of the creditor in that respect are preserved, although the remedy is to some extent varied in foi'm by the act under consideration. There is no obstacle interposed in the way of obtaining his judgment; and every particle of the debtor’s property subject to exeeútion, may be seized and sold without delay, to satisfy the judgment. And the remedy is not the less efficacious, because, in the exercise of a sound and humane discretion, the Legislature has required the property to be sold on credit, when a sale for cash would result in a ruinous sacrifice. Such a provision is no more a violation of the contract, nor more unjust to the creditor, than the statutory requirement that personal representatives shall sell the estates of decedents on reasonable credit. On the contrary, we hold, as said above, that 'a sale on credit, under such circumstances, is alike beneficial to creditor and debtor, as a class.
"We are of opinion, therefore, that the act of May 28th, 1870, entitled “an act to prevent the sacrifice of personal property at forced sales,” does not impair the obligation of contracts, and is not for that reason unconstitutional and void.
ETor do we regard it as' violating the '4th section of the 11th article of the State constitution, which provides that “ the General Assembly is hereby prohibited from *183 passing any law staying the collection of'debts commonly known as stay laws.” The laws commonly called stay laws, always stay for a time the hand of the creditor, and give indulgence to the debtor. They suspend, or stop for a time, legal proceedings against him; they prevent the creditor, for the time, from enforcing his judgment; and the debtor, during the stay, is left in the possession and enjoyment of his property. Procedings against him, for the time being, are absolutely suspended. PTo such effect is produced by the law under consideration. Judgment is obtained as usual; execution issues instanier; the property of the debtor,' his entire personal estate subject to execution, if necessary, is liable to be seized without one moment’s delay, and is sold as before, for the satisfaction of the judgment. He secures not one moment’s indulgence; but as to him the judgment is liable to be enforced promptly and vigorously ; the only change being, that the property may, if required by the. debtor, be sold on terms which will prevent its sacrifice, and will, as a general rule, more effectually secure the debt.
"We are of opinion, therefore, that the act of Assembly under consideration is not only constitutional and valid, but was a wise, humane and salutory exercise of legislative discretion.
The judgment of the Circuit court,'awarding the -writ of mandamus must be reversed, with costs to the plaintiff in error; and judgment should be entered for him, discharging the rule for .a mandamus, and for his costs incurred in the Circuit court.
Judgment reversed.